ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

NEAL C. HONG (ILBN 6309265)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5081
    neal.hong@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. **CR 24-70958-MAG** |
| Plaintiff, | NOTICE OF PROCEEDINGS ON OUT-OF-DISTRICT CRIMINAL CHARGES PURSUANT TO RULES 5(c)(2) AND (3) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE |
| v. | |
| SETH DANIEL STEWART, | |
| Defendant. | |

Please take notice pursuant to Rules 5(c)(2) and (3) of the Federal Rules of Criminal Procedure that on June 27, 2024, the above-named defendant was taken into custody pursuant to an arrest warrant (copy attached) issued upon a Complaint pending in the Central District of California, Case Number 24-mj-03811-DUTY.

In that case the defendant is alleged to have violated 18 U.S.C. § 2261A(2)--Stalking.  The maximum penalties are: 5 years of imprisonment, $250,000 fine, 3 years of supervised release, and a $100 special assessment.

Respectfully Submitted,

ISMAIL J. RAMSEY
UNITED STATES ATTORNEY

Date: June 27, 2024

s/ Neal Hong
NEAL C. HONG
Assistant United States Attorney

AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)      ☒ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

```
LODGED
CLERK, U.S. DISTRICT COURT
JUN 26 2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____rsm_____ DEPTUY
```

United States of America

v.

Seth Daniel Stewart,
  aka "Angel Cross,"

Defendant

Case No. **2:24-mj-03811-DUTY**

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the dates of December 22, 2023, through June 17, 2024, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 2261A(2) | Stalking |

This criminal complaint is based on these facts:

  *Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Hailey Andrew Kryszewski
_____
*Complainant's signature*

Hailey Andrew Kryszewski, FBI Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:     June 26, 2024
       _____
                                          *Judge's signature*

City and state:   Los Angeles, California        Hon. Maria A. Audero, U.S. Magistrate Judge
                                          *Printed name and title*

AUSA:  Anna Boylan (x2170)_____

## <u>AFFIDAVIT</u>

I, Hailey Andrew Kryszewski, being duly sworn, declare and state as follows:

## I.  <u>INTRODUCTION</u>

1.   I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and I have been so employed since October 2023.  My current assignment is as a SA assigned to the Los Angeles Field Office Joint Terrorism Task Force ("JTTF").  My duties at the JTTF include investigating violations of the laws of the United States, specifically domestic terrorism.  As a SA, I have received both formal and informal training from the FBI regarding criminal and domestic terrorism investigations. Through my training and experience with the FBI, I am familiar with the methods of operations individuals associated with domestic terrorism employ, including their use of cellular devices, computers, social media, and online platforms.  In addition, I have received both formal and informal training from the FBI and other institutions regarding computer-related investigations and computer technology.

## II. <u>PURPOSE OF AFFIDAVIT</u>

2.   This affidavit is made in support of a criminal complaint against and arrest warrant for SETH DANIEL STEWART, also known as "Angel Cross" ("STEWART"), for a violation of Title 18, United States Code, Section 2261A(2) (Stalking) (the "Subject Offense").

3.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and

i

information obtained from various law enforcement personnel and
witnesses.  This affidavit is intended to show merely that there
is sufficient probable cause for the requested complaint and
arrest warrant and does not purport to set forth all of my
knowledge of or investigation into this matter.  Unless
specifically indicated otherwise, all conversations and
statements described in this affidavit are related in substance
and in part only, and all dates and times are on or about those
indicated.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

4.    As set forth below, from September 2022 through June
2024, STEWART sent approximately 80 e-mails and 60 voicemails to
multiple employees of a global entertainment company located in
the Central District of California (the "Company"), certain of
which contained harassing and intimidating communications and
threats to injure and kill the employees.

5.    In September 2022, STEWART began contacting employees
of the Company to attempt to buy the intellectual property
rights to a television show that the Company owns and that aired
on television from the late 1990s to the early 2000s (the
"Show").  After representatives from the Company declined
STEWART's requests and an Assistant General Counsel for the
Company ("Victim 1") sent STEWART a cease-and-desist letter,
STEWART began sending threatening and harassing e-mails and
voicemails directed against Victim 1 and other Company
employees.

6.    On May 10, 2024, STEWART left several voicemails with the Company,[1] stating: "[Victim 1] . . . and everyone that works at [the Company].  I am coming after you and your souls within the next couple of weeks.  Don't take this too kindly because I'm gonna come after you"; "And I'm gonna come after [Victim 1 and others]. . . .  This is your last opportunity to make things right with me or you're going to pay in hell"; "I'm going to kill you.  And then, I'm gonna kill [Victim 1].  And then I'm gonna kill all the woke executives at [the Company]."

7.    Over the next several weeks, STEWART continued leaving threatening voicemails, including: "Fuck you, [Victim 1]. . . . You're all gonna burn in hell.  And I'm going to watch you burn like a chicken in an oven.  HAHAHA.  You all are going to burn. Watch me.  I have plenty of matches;" and "Your company is so dead.  You guys are dead meat and believe me [Victim 1] . . . , and all those fucking woke executives are gonna pay for what they did."

8.    In addition to the threatening and harassing voicemails and e-mails, from December 22, 2023, through June 17, 2024, STEWART sent or attempted to send dozens of pizza deliveries to Victim 1 and other Company employees at their work and home addresses in the Central District of California.

---

[1] Based on my review of documents provided by the Company and my conversation with a representative with the Company, on or about April 22, 2024, the Company set up a security measure to reroute any calls to any Company or Company employee's phone numbers from STEWART's Phone Number, which was rerouted to a voicemail box monitored by the Company's security team.  Any reference herein to a call received from STEWART's Phone Number is listed as a call to "the Company," unless otherwise noted.

STEWART left several voicemails referencing the pizza deliveries.  In one such voicemail, on March 9, 2024, STEWART stated: "Hi.  This is Satan calling.  Just wanted to let you know that I delivered some pizza to the [Company].  I hope [Company employee] enjoys it because that's the last thing [he/she]'s gonna ever have in [his/her] life.  Hahahaha.  K bye."

9.    In early June 2024, the Company sought a Temporary Restraining Order against STEWART on behalf of Victim 1.  On June 13, 2024, STEWART filed a response to the Company's application in which he admitted to sending threatening e-mails and voicemails and pizza deliveries to Victim 1 and other Company employees.

10.   Based on the information herein, my training and experience, my review of documents, my discussions with representatives of the Company and law enforcement agents, and my knowledge of this investigation, I believe that STEWART knowingly engaged in a pattern of sending voicemails and e-mails, certain of which contained a threat to injure or kill Victim 1, and that STEWART sent the voicemails and e-mails for the purpose of harassing and intimidating Victim 1.  These communications placed Victim 1 in reasonable fear of death or serious bodily injury and would be reasonably expected to cause substantial emotional distress to Victim 1.

## IV. <u>STATEMENT OF PROBABLE CAUSE</u>

11.   Based on my review of law enforcement reports, documents provided by the Company, conversations with other law

enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.   STEWART'S ACCOUNTS**

12.   As set forth below, STEWART sent threatening, harassing, and intimidating e-mails and voicemails to Victim 1 and other Company employees using cellular phone number 650-602-2735 ("STEWART's Phone Number") and using the following three email accounts: sethdstewart23@gmail.com ("STEWART's E-Mail Account 1"), startopiacorporation@gmail.com ("STEWART's E-Mail Account 2"), and cheekeeout@myyahoo.com  ("STEWART's E-Mail Account 3"; collectively, with STEWART's Phone Number, STEWART's E-Mail Account 1, and STEWART's E-Mail Account 2, "STEWART's Accounts").

1.   STEWART's Phone Number

13.   Based on my review of law enforcement databases, STEWART has credit reports, from June 19, 2024, listing STEWART's Phone Number as belonging to STEWART.

14.   Based on my review of San Jose Police Department records, on May 14, 2024, a San Jose Police Department Officer called STEWART's Phone Number and the person who answered the phone identified himself as STEWART.

15.   Based on my review of documents provided by the Company, STEWART sent approximately two dozen e-mails to Company employees listing STEWART's Phone Number as his telephone number.  For example:

a.   On October 19, 2022, from STEWART's E-Mail Account 1, STEWART sent an e-mail to a Company employee stating:

"I need to speak with you urgently regarding the [Show] situation.  I can be reached at 650-602-2735."  This is STEWART's Phone Number.

      b.   From October 27 through December 1, 2022, STEWART sent at least seven e-mails to Victim 1 and other Company employees and signed the e-mails with STEWART's E-Mail Account 1, his name, his alias, and STEWART's Phone Number, as follows:

> Angel Cross (Seth Stewart)
> sethdstewart23@gmail.com
> Cell: (650) 602-2735

      c.   From February through October 2023, STEWART sent at least seventeen e-mails to Victim 1 and other Company employees and signed the e-mails with STEWART's E-Mail Account 2, his alias, and STEWART's Phone Number, as follows:

> Angel Cross (CEO/Owner)
> startopiacorporation@gmail.com | +1 650.602.2735

    16.   Based on my review of documents provided by the Company, on at least six separate occasions, a voicemail was left with the Company from STEWART's Phone Number stating that it was "Angel Cross" or "Angel Cross with Startopia Productions" and asking for a call back to STEWART's Phone Number.  Based on my review of California Secretary of State records for Startopia Productions, STEWART is the registered agent for the company.

    17.   Based on my training and experience, the above information, and my knowledge of this investigation, STEWART's Phone Number is associated with and being used by STEWART.

18.   Based on my review of law enforcement databases, I know that STEWART's phone number is serviced by Cellco Partnership d/b/a Verizon Wireless ("Verizon"), a cellular service provider headquartered in Bedminster, New Jersey.

19.   In my training and experience, I have learned that cellular phone service providers, such as Verizon, are companies that provide cellular communications service to the general public.  In order to provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to devices that are within range of the tower's signals.  Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity.  By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data.  When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it.  Cellular towers are connected to a national network of wires to transmit the calls, messages, and data to their ultimate destinations, and transmitting a call, message, or data uses a facility of interstate commerce.  Based on my training and experience, knowledge of this investigation, and discussions with other law enforcement agents with knowledge of this investigation, I believe that when STEWART placed phone calls via STEWART's Phone Number, he used a facility of interstate commerce.

2.   STEWART's E-Mail Account 1

20.   Based on my review of San Jose Police Department records, on June 28, 2019, a San Jose Police Department Officer spoke to STEWART in person in response to a threat to an LGBTQ+ facility in Washington D.C. sent from STEWART's E-mail Account 1.  The officer asked STEWART to view the "Sent File Folder" for STEWART's E-mail Account 1, which STEWART showed to the officer on STEWART's computer.

21.   Based on my review of documents provided by the Company, and as discussed above, from October 27 through December 1, 2022, STEWART sent at least seven e-mails to Victim 1 and other Company employees and signing the e-mails with STEWART's E-Mail Account 1, his name, his alias, and STEWART's Phone Number, as follows:

> Angel Cross (Seth Stewart)
> sethdstewart23@gmail.com
> Cell: (650) 602-2735

22.   Based on my open-source search of STEWART's E-Mail Account 1, STEWART applied to join a group named "Access Paranormal"[2] listing his full name and STEWART's E-Mail Account 1.

23.   Accordingly, based on my training and experience, the above information, and my knowledge of this investigation, STEWART uses STEWART's E-Mail Account 1.

---

[2] Based on my open-source research, "Access Paranormal" is an online group that claims to investigate and educate others about paranormal activity and events.

      3.   STEWART's E-Mail Account 2

24.  Based on my review of California Secretary of State records, STEWART is the registered agent of Startopia Productions, which was created in September 2022.  Between December 17, 2022, to January 14, 2023, STEWART transferred registered agent status to his alias Angel Cross.  The registered address for Startopia Productions is STEWART's previous home address.

25.  Based on my review of documents from the Company, from February through October 2023, STEWART sent at least seventeen e-mails to Victim 1 and other Company employees and signed the e-mails with STEWART's E-Mail Account 2, his alias, and STEWART's Phone Number, as follows:

           Angel Cross (CEO/Owner)
           startopiacorporation@gmail.com | +1 650.602.2735

26.  Based on my review of documents provided by the Company, on at least six separate occasions, a voicemail was left with the Company from STEWART's Phone Number stating that it was "Angel Cross" or "Angel Cross with Startopia Productions" and asking for a call back to STEWART's Phone Number.

27.  Based on my open-source search of STEWART's E-Mail Account 2, STEWART, using his alias, posted a listing on a screenwriting staffing website for applicants to e-mail STEWART's E-Mail Account 2.  The listing was looking for writers to do a revival of the Show.

28.  Based on my training and experience, the above
information, and my knowledge of this investigation, STEWART
uses STEWART's E-Mail Account 2.

    4.  <u>STEWART's E-Mail Account 3</u>

29.  Based on my review of documents provided by the
Company, on January 12, 2024, STEWART's E-Mail Account 3 sent
several e-mails to Victim 1 and other Company employees.  One of
those e-mails stated, "it is also a testament to making false
police reports against people with mental disabilities," and,
"I'm doing this to teach you all a lesson on what happens when
you mess with an autistic person."

30.  Based on my review of San Jose Police Department
records, on March 3, 2023, the Company contacted the San Jose
Police Department to report concerning communications from
STEWART.  On March 4, 2023, the San Jose Police Department
conducted a welfare check of STEWART at his then-address and
spoke to STEWART in person.

31.  As discussed in more detail below, on June 4, 2024,
the Company also sought a Temporary Restraining Order against
STEWART.  Based on my review of STEWART's filed response to the
Company's Temporary Restraining Order, which he filed on or
about June 13, 2024, with the Superior Court of the State of
California, STEWART stated, "I am a 21-year-old autistic
individual."

32.  Based on my training and experience, the above
information, and my knowledge of this investigation, STEWART
uses STEWART's E-mail Account 3.

33.      Based on my training and experience, I have
learned that persons engaged in communicating threats will
typically use Virtual Private Networks ("VPNs") which allow a
user to search and interact with the internet while hiding the
user's Internet Protocol ("IP") address location and allow users
to mask their IP address.  This will cause the user's IP address
to appear as another location hiding their true location or
making it appear as if the communications are coming from a
different location.

34.      Based on my review of subscriber information
provided by Google for STEWART's E-mail Account 1, on June 18,
2024, STEWART's IP address, using geolocation, resolved to
Atlanta, Georgia, and the Internet Service Provider was DataCamp
Limited.  Based on my open research, I know that DataCamp
Limited is a VPN hosting service.

35.      Based on my review of subscriber information
provided by Google for STEWART's E-mail Account 2, on June 15,
2024, STEWART's IP address, using geolocation, resolved to
Phoenix, Arizona, and the Internet Service Provider was Tzulo.
Based on my open research, I know that Tzulo is a VPN network
hosting service.

36.      Based on my review of subscriber information
provided by Yahoo for STEWART's E-mail Account 3, on April 17,
2024, STEWART's IP address, using geolocation, resolved to
Atlanta, Georgia, and the Internet Service Provider was DataCamp
Limited.  Based on my open research, I know that DataCamp
Limited is a VPN hosting service.

37.   Based on my training and experience, knowledge of this investigation, and discussions with other law enforcement agents with knowledge of this investigation, I believe that STEWART's e-mails sent via STEWART's E-mail Accounts 1, 2, and 3 are interstate communications and sending e-mails use the internet which are facilities of interstate commerce.

   **B.   September-November 2022: STEWART E-Mails and Calls the Company to Seek the Intellectual Property Rights to the Show**

38.   In 2022, STEWART sent dozens of e-mails to various employees of the Company from STEWART's E-Mail Account 1, seeking to purchase the intellectual property rights to the Show.  These e-mails were signed both with STEWART's name and his alias Angel Cross.

39.   For example, on September 27, 2022, STEWART, using his alias Angel Cross, e-mailed an employee of the Company from STEWART's E-Mail Account 1 seeking to purchase the intellectual property rights to the Show.  Another Company employee responded, in pertinent part: "We appreciate you reaching out, but our company's long-established policy does not allow us to accept for review or consideration any ideas, suggestions or creative materials not specifically solicited by us. . . .  I recognize this may be disappointing, but we are unable to participate in any meeting or receive any creative materials regarding the below."

40.   This e-mail did not deter STEWART, as he continued reaching out to Company employees.  On October 4, 2022, a Company employee explained, via e-mail, "As I stated in my prior

email (attached), we are not able to accept unsolicited submissions.  If you are represented by an agent, please have them set up a meeting through the appropriate and customary channels."

41.  In response, on October 19, 2022, STEWART, again using his alias Angel Cross, e-mailed a Company employee from STEWART's E-Mail Account 1 stating, "I need to speak with you urgently regarding the [Show] situation.  I can be reached at [STEWART's Phone Number]."  After this e-mail, the Company employee responded: "Please stop contacting me.  I have made the company's position very clear."

42.  Over the next few months, STEWART, again using his alias Angel Cross, sent several more e-mails to employees of the Company from STEWART's E-Mail Account 1, again asking for a licensing deal to obtain the intellectual property to the Show so that he could revive the Show with the original cast.  For example, on November 9, 2022, STEWART, again using his alias Angel Cross, e-mailed from STEWART's E-Mail Account 1 stating: "I have sent numerous emails regarding this matter with no cooperation from your company and this is starting to upset me, since I've not heard anything in the past two weeks regarding my inquiry."

**C.    December 2022-January 2024: STEWART E-Mails and Begins Harassing Victim 1**

43.  On December 1, 2022, Victim 1 served STEWART, via STEWART's E-Mail Account 1, with a cease-and-desist letter on behalf of the Company.  In response, STEWART, using both his

name and alias Angel Cross, e-mailed Victim 1 from STEWART's E-Mail Account 1 stating: "In what way have I become disruptive? I've worked so hard to try and make this happen, only for your company to treat me like garbage because of my disability."

44.   Over the next several months, STEWART continued sending numerous e-mails to Victim 1, using STEWART's E-Mail Account 2.  For example, on March 2, 2023, STEWART, using his Angel Cross alias, e-mailed Victim 1 twice from STEWART's E-Mail Account 2 requesting "an in-person meeting" at the Company's office and listing the Company's address in the Central District of California.  Over the next few months, he sent dozens more e-mails and voicemails to numerous employees of the Company.

45.   On January 12, 2024, STEWART, using STEWART's E-Mail Account 3, sent at least ten e-mails to Victim 1.  In those e-mails, STEWART expressed increasing frustration with Victim 1 and the Company, stating, among other things:

a.   "YOU KNOW WHAT GRINDS MY GEARS" and "[COMPANY] EXECUTIVES SWATTING PEOPLE OVER A SIMPLE REQUEST FROM SOMEONE TO LICENSE [THE SHOW]."

b.   "I know your company's strategy . . . to push a propaganda of wokeness and greed."

c.   Another e-mail included a picture of Victim 1 with a biography of Victim 1 and a message that stated: "is it also a testament to making false police reports against people with mental disabilities with the assistance of [Company employees] alongside the other douchebags at [the Company]? pathetic."

d.   Another e-mail to Victim 1 and approximately 30 other Company employees stated: "all of you are pedophiles."

e.   Another e-mail to Victim 1 and approximately 30 other Company employees stated: "lets [sic] face it . . . you're the one that started this, not me.  i'm doing this to teach you all a lesson on what happens when you mess with an autistic person."  (ellipses in original).

**D.   May-June 2024: STEWART Leaves Voicemails Threatening to Kill Victim 1 and Reporting a False Bomb Threat at the Company's Office**

46.  On May 10, 2024, STEWART, using STEWART's Phone Number, left nine voicemails in less than a one-hour span for the Company, including stating the following:

a.   "Call the FBI on me you fucking stupid mother fucking coward . . . .  I'm going to kill you.  And then, I'm gonna kill [Victim 1].  And then I'm gonna kill all the woke executives at [the Company]."

b.   "This is Satan calling, I hope that pizza was delicious last night.  Because that's the last thing you're ever going to have in your entire life.  Because I am coming after you and your family."

c.   "This is not a joke, I am coming after you and your family.  And everyone else that works for [the Company].  You people have messed with the wrong person.  You fucking stupid motherfucker.  I am coming after your souls and your souls are going to be mine eternally in hell.  And you're going to burn until the day that your flesh rips off from your skin.  HAHA.  Good luck."

d. "[Victim 1] . . . and everyone that works at [the Company]. I am coming after you and your souls within the next couple of weeks. Don't take this too kindly because I'm gonna come after you."

e. "And I'm gonna come after [Victim 1 and others]. And all those dipshit wolf people that work at [an associated company] and [the Company]. Within the next couple of weeks, I fucking dare you to put me away in the mental ward, you fucking dumb motherfucker. This is your last opportunity to make things right with me or you're going to pay in hell."

f. "This is Satan calling. Call the FBI you fucking coward. Because you're gonna see what kind of power I have over you, you fucking retarded son of a bitch."

47. Between May 13 and 14, 2024, STEWART, using STEWART's Phone Number, left ten more voicemails for the Company, including stating the following:

a. "Fuck you. . . Fuck you, [Victim 1]. . . . You're all gonna burn in hell. And I'm going to watch you burn like a chicken in an oven. HAHAHA. You all are going to burn. Watch me. I have plenty of matches."

b. "I know where you live . . . I'm going to come visit you. If you don't give me what I want. It's going to happen in a couple of months or less. Good luck and be ready for me. Your Satan overlord."

48. On May 26, 2024, STEWART, using STEWART's Phone Number, left another voicemail for the Company stating in pertinent part: "Your company is so dead. You guys are dead

meat and believe me [Victim 1], and all those fucking woke executives are gonna pay for what they did.  You better fucking watch out."

49.  That same day, STEWART, using STEWART's Phone Number, called a general phone number for the Company purporting to be a Company employee and claiming to be at the Company's office in the Central District of California.  On that call, STEWART, while purporting to be the Company employee, claimed to have received a package at the Company's office containing a white powdery substance.  STEWART then stated that he had received a bomb threat letter to "his office" stating that "they" were going to bomb the Company.

50.  On June 8 and 9, 2024, STEWART, using STEWART's Phone Number, called the Company, stating: "You are so fucked.  Good luck getting sued in the near future.  Good luck [Victim 1]," and after screaming for approximately 23 seconds, stated: "[Victim 1] sucks.  [Victim 1] sucks.  [Victim 1] sucks.  You people are fucking liars."

**E.   December 2023-June 2024: STEWART Harasses and Intimidates Victim 1 with Pizza Deliveries and Threatens Victim 1**

51.  On at least nine separate occasions, according to information provided by the Company, from December 2023 through June 2024, STEWART sent and attempted to send dozens of unwanted pizza deliveries to Victim 1 both at Victim 1's residence and office, as well as to other Company employees.  These deliveries were sometimes accompanied by voicemails and/or e-mails with threatening messages.  For example:

a.   On December 22, 2023, STEWART sent a pizza delivery to Victim 1's office in the Central District of California.

b.   On December 23, 2023, STEWART sent a pizza delivery to Victim 1's residence in the Central District of California.

c.   On March 9, 2024, STEWART left a voicemail at the Company stating, "Hi.  This is Satan calling.  Just wanted to let you know that I delivered some pizza to the [Company].  I hope [Company employee] enjoys it because that's the last thing [he/she]'s gonna ever have in [his/her] life.  Hahahaha.  K bye."

d.   On March 10, 2024, STEWART left a voicemail for the Company, stating: "Hello [Company employee] this is Satan calling, I hope that pizza was delicious last night.  Because that's the last thing you're ever going to have in your entire life.  Because I am coming after you and your family."

e.   On May 13, 2024, the Company received a pizza delivery, but security rejected the delivery.

f.   On May 20, 2024, several more pizzas were ordered online for delivery to Victim 1's residence.

g.   On May 26, 2024, Victim 1 received a pizza order to Victim 1's residence, but Victim 1 turned the pizza delivery driver away.

h.   On June 17, 2024, Victim 1 received three separate e-mails from pizza delivery companies with

confirmations for a "$98.47 pizza order" for six pizzas, "$22.86 pizza order," and "$32.83 pizza order."

        i.   On June 17, 2024, Victim 1 also received two voicemails claiming to be delivery persons with pizza deliveries at Victim 1's work address.

52.   Based on my training and experience, my discussions with other law enforcement agents with knowledge of this investigation, my review of documents from the Company, my conversations with representatives from the Company, and my knowledge of this investigation, I believe that STEWART sent the unwanted pizzas to Victim 1's residence and office in order to intimidate and harass Victim 1, including by showing Victim 1 that STEWART knows where Victim 1 lives and works, and as such, the pizza deliveries and attempted pizza deliveries would reasonably expect to cause a victim substantial emotional distress.

    **F.**    **June 13, 2024: STEWART Admits Sending Pizzas and Threatening E-mails and Voicemails to Victim 1 and Other Company Employees**

53.   On June 4, 2024, the Company filed a Temporary Restraining Order ("TRO") in the Superior Court of California, County of Los Angeles, on behalf of Victim 1 against STEWART. The Court set a hearing on the TRO for June 26, 2024.  The TRO ordered STEWART not to have any personal contact and stay away from Victim 1 until the hearing, and ordered STEWART not to do the following: "Harass, . . . disturb the peace of the person[,] . . . make threats of violence against the person[,] Follow or stalk the person during work hours or to or from the place of

work[,] Contact the person, either directly or indirectly, in **any** way, including but not limited to, in person, by telephone, in writing, by public or private mail, by email, by fax, or by other electronic means[, or] Enter the workplace of the person" (emphasis in original).  The TRO also ordered STEWART to stay at least "200 yards away" from Victim 1 and Victim 1's workplace and home.

54.  On June 13, 2024, STEWART responded to the TRO by filing a California Form WV-120, MC-025 digitally signing his name under the certification block, including "Sincerely, Seth Stewart" at the end of the response, and stating in pertinent part the following:

a.   "I initially contacted [the Company] in September 2022 using the alias 'Angel Cross' to inquire about a possible licensing deal for the [Show] intellectual property.  I believe my approach was professional and courteous, and I was disappointed to find their response dismissive and upsetting."

b.   "Feeling frustrated and unheard, I later made threatening voicemails and emails to [the Company] executives in February-March 2023."

c.   "This distress was significantly amplified in March of 2023 when [the Company] initiated a false welfare check on me at my residence."

d.   "These events that I unfortunately contributed to further anger and inappropriate statements directed towards [Victim 1] and other [Company] executives in May 2024.  I take

full responsibility for my actions, including creating multiple
aliases and sending pizzas as pranks."

      e.   "I also deeply regret the threatening voicemails,
which I freely admit were inappropriate and not meant to be
taken literally due to my emotional state at the time as I was
only portraying the role of a character who was processed [sic]
by a satanic demon."

### G.   June 15-17, 2024: STEWART Sends More Threatening Voicemails and Harassing Pizza Deliveries to Victim 1

55.   On June 15, 2024, Victim 1 received two voicemails
with disturbing messages, which are believed to be from STEWART,
including:

      a.   "[Music and Singing] I smell you around the
corner, ripe and ready for eating.  It's a [inaudible], you will
soon be bleeding.  I am your only [inaudible].  You are what I
eat, so much flesh, so much meat.  With my hand, your skull I
will beat.  Leave your carcass in the street.  My arms are a
[inaudible], they rip your limbs from the body.  Relish the pain
in which you lie [inaudible].  You are what I eat, so much
flesh, so much meat."

      b.   "You abhorrent scum.  You ignorant fool, I will
sue you.  You are going to be the target of the greatest lawsuit
the world has ever seen.  You don't know why, it's completely
obvious.  It's so obvious the most deplorable peasant could
grasp the full magnitude of your wickedness and treachery with
the greatest of ease.  Your actions cry out for mercy and I will

be happy to deliver it.  And if you thinking this is a mistake or merely a deception mine, you're sadly mistaken my friend."

56.  As noted above, on June 17, 2024, Victim 1 received three separate e-mails from pizza delivery companies with confirmations for a "$98.47 pizza order" for six pizzas, "$22.86 pizza order," and "$32.83 pizza order."  On that same day, Victim 1 also received two voicemails claiming to be delivery persons with pizza deliveries at Victim 1's work address.

**H.    STEWART's Communications and Actions Placed Victim 1 in Reasonable Fear of Death or Serious Bodily Injury and Caused Substantial Emotional Distress**

57.  Based on my review of documents provided by the Company, including Victim 1's declaration filed with the TRO that the Company filed on behalf of Victim 1, Victim 1 declared on June 3, 2024, as follows:

a.    STEWART's "continual communications to me and other [Company] employees, which have recently escalated into incessant threats of violence, including, 'I'm gonna kill [Victim 1] . . . and everyone that works at [the Company].  I am coming after you and your souls within the next couple of weeks,' have caused me and other [Company] employees to suffer extreme distress and fear for our safety both at home and the workplace."

b.    "At 1:30 a.m. on December 22, 2022, I received multiple calls from a [pizza company]'s delivery man who stated that Domino's received an online order for several pizzas, and he was attempting to deliver the pizzas to my home and office at [the Company].  At the time, I was in New York and did not make

the online order.  Given his repeated contacts and bizarre
behavior, I believed [STEWART] ordered the pizzas to my home and
office.  This caused me extreme concern and anxiety because I
had never given [STEWART] my home address."

c.    Between January and April 2024, Victim 1 stated
that he/she received numerous e-mails from persons claiming to
be "an attorney," a "screenplay writer," and a "president and
CEO" of an entertainment company -- all of whom were claiming to
obtain the rights and licensing for the Company's Show.
Victim 1 declared: "At this point in time, I became more
concerned for my safety and that of my colleagues, and discussed
my concern with members of [the Company's] security team."

d.    STEWART's "frequent and deranged conduct, which
appears to be significantly escalating, has caused me and other
[Company] employees extreme emotional distress.  I am afraid for
mine and my family's safety, and I do not feel that I am safe
either at home or at my place of work.  To say the least,
[STEWART]'s actions have been tremendously disturbing, and I
believe [STEWART]'s conduct will continue[.]"

58.  Based on my training and experience, my discussions
with other law enforcement agents with knowledge of this
investigation, my review of documents from the Company, my
conversations with representatives of the Company, and my
knowledge of this investigation, I believe that STEWART sent
these voicemails and e-mails by using the internet and
telephones which are facilities of interstate commerce, placed
online orders for pizza deliveries using Victim 1's Company e-

mail address, and sent pizza deliveries to Victim 1's residence and office in order to intimidate, harass, and threaten to injure or kill Victim 1.  I also believe that STEWART's pattern of conduct by calling, e-mailing, sending pizza deliveries, and attempting to send pizza deliveries were acted with the intent to harass or intimidate Victim 1 and placed Victim 1 in reasonable fear of death or serious bodily injury and would reasonably be expected to cause substantial emotional distress to Victim 1.

## V.  <u>CONCLUSION</u>

59.  For all the reasons described above, there is probable cause to believe that STEWART violated Title 18, United States Code, Section 2261A(2) (Stalking).


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 26th day of
June, 2024.


_____
HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>SETH DANIEL STEWART,<br>aka "Angel Cross,"<br><br>DEFENDANT | **WARRANT FOR ARREST**<br><br>ON COMPLAINT<br><br>CASE NO.: **2:24-mj-03811-DUTY** |

To:   UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest **SETH DANIEL STEWART, also known as "Angel Cross,"** and bring him forthwith to the nearest Magistrate Judge to answer a complaint charging him with Stalking, in violation of Title 18, United States Code, Section 2261A(2).

REC: BY AUSA          [Detention]

June 26, 2024
_____
Date

Honorable Maria A. Audero, U.S. Magistrate Judge
_____
Name of Magistrate Judge

_____
Signature of Magistrate Judge

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at (location): | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

**DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO**